DAY LAW OFFICES
MONTIE S. DAY (SBN 073327)
Attorney at Law
P. O. Box 1045
Shoshone, Idaho
Telephone: (208) 280-3766

Attorneys for P. PAUL STORRER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| P. PAUL STORRER,<br><br>Plaintiff,<br><br>vs.<br><br>THE PAUL REVERE LIFE INSURANCE COMPANY, a Massachusetts corporation,<br><br>Defendant. | Case No. C97-04014MJJ<br><br>MEMORANDUM IN RESPONSE TO OPPOSITION TO MOTION TO CONSIDER CASE AS RELATED CASE AND TO REASSIGN CASE TO THE HONORABLE JAMES LARSON |
| JOAN HANGARNER,<br><br>Plaintiff,<br><br>vs.<br><br>THE PAUL REVERE LIFE INSURANCE COMPANY, a Massachusetts corporation,<br><br>Defendant. | Related Action:<br>Case No. C99-5286JL*[1]<br><br>Date: None Set<br>. |

[1] This case is closed, judgment having been affirmed by the Ninth Circuit Court of Appeals in *Hangarter v. The Paul Revere Life Insurance Company (9TH Cir) 373 F.3d 998* .

## INTRODUCTION

The Paul Revere Life Insurance Company ("REVERE") obviously would like to separate this case from the case of *Joan Hangarter v. The Paul Revere Life Insurance Company, Case No. C99-5286JL* which was tried by Judge James Larson. The arguments against the transfer and "related case" designation are simply invalid.

## RESPONSE ARGUMENTS

Plaintiff responds to the **major** arguments against "relating" and "transferring" the action:

**A. The "Dissimilar" Argument**

REVERE, during the years 1996-1997 (at the time plaintiff's claim was denied) was being acquired by Provident Life & Accident Insurance Company ("Provident"). Provident merged with Unum Insurance Company in 1999 to form UnumProvident. REVERE became a wholly owned subsidiary of UnumProvident.

REVERE argues that the cases are substantially different in that there are three unrelated entities. This argument is totally untrue. The mere restructuring of the entitles and the changes of names do not change the facts and the relationship of the cases. Mr. STORRER has had to deal with all three company names, and the change of names does not make the cases unrelated actions.

As noted, we deal with the same "players" in both cases. The "Former Vice President" for Provident, Mr. Mahoney, started assuming responsibility for group disability in 1994 and continued through the acquisition of REVERE in l997, and continued thereafter with the Unum in l999. Mr. Mahoney was Senior Vice President, Customer Care, for UnumProvident, the combined companies, at the time of Plaintiff's claim. **"In addition, Defendants in the case at bar developed a comprehensive system of targeting and terminating existing expensive claims like Plaintiff's**." See *Hangarter v. Paul Revere Life Insurance Company*, *236 F. Supp. 1069, 1084 fn. 11, 1091, 1092 fn. 18 (N.D. of Cal. 2002)*, affirmed in *Hangarter v. Provident Life and Accident Insurance Company, et. al*, *373 F. 3d*

*988 (9th Cir. 2004)* ("*Hangarter v. Provident*"). The term "plaintiff" can refer to either *Hangarter* or STORRER - both were the subject of the same illegal and unethical tactic in the same time frame.

Not only are the two cases dealing with the same policies, the same duties of the insured, and the same management, but the cases are similar down to the same claim adjustor, Mr. Kenneth Seaman.

In the instant STORRER case, evidence also demonstrated that REVERE and Provident were sharing, through Mr. Mahoney, information on methods of terminating claims, with REVERE's use of a "psych unit" to target psychological disability as such claims appeared to be a "gray" area and easy targets, i.e. ones which, if targeted, could "impact the reserves approximately $25 million annually based upon REVERE's statistics." (ERV3T11 ExQ[2] 708-709 of Court of Appeal Record in Storrer v. Paul Revere)

REVERE, in its 1994 Stockholder's Report, issued in 1995, explained that:

1. "Paul Revere ... suffered a deterioration in claims experience, particularly within certain blocks of business issued between 1985 and 1989. The result was a decidedly more negative claims experience than anticipated, prompting a variety of actions among disability insurance companies. ... As the troubled 1985-1989 block becomes a less significant part of the total, we expect its negative impact to diminish." (ERV3T11 ExU 746) (STORRER's policy, like Hangarter, id., was issued during between 1985 and 1989)

2. "The individual disability insurance segment's adverse claim experience resulted principally from the block of policies issued between 1985 and 1989, especially physicians, Florida and California." (ERV3T11 ExU 750)

3. During 1994, United States morbidity was severly impacted by a higher incident of new claims and lower claim termination rates on policies issued during 1985-1989, especially in Florida and California. (ERV3T11 ExU 751)

4. "The Company has undertaken an extensive program to remedy this situation." (ERV3T11 ExU 751)

Indeed, STORRER (like Hangarter) was **illegally targeted for claim termination under REVERE's management's direction and illegal programs to increase its profits. REVERE developed, "with the expertise of Ralph Mahoney, a comprehensive system for targeting and terminating expensive claims like Plaintiff's."** ***Hangarter v. Paul***

[2] All References are to the Appendix on Appeal of Storrer v. Paul Revere

***Revere Life Insurance Company, 236 F. Supp. 2d 1069, 1085.* There was a document created in l996 entitled a "Provident/Paul Revere Transitional Plan" which contained claim handling matters[3]. Mahoney's role was to develop a "targeting scheme" to achieve a more profitable "net termination ratio".**

In an internal memorandum[4] dated April 25, 1995, Mahoney describes REVERE's existing "extended forecast in certain areas" and its targeting scheme implemented with the claims department as well as the potential impact on overall results. In this document, **Mahoney describes targeting "Psych" claims, that Paul Revere boasts of 2 MD's, 1 Phd...in its Paul Revere's "psych unit" which was previously started, and in the past two years, this "impacted the reserves by approximately $25 million annually." As Mahoney described, "since there is a 'gray' area in psych claims, there is a better chance of some type of resolution."** (ERV3T11 Ex. Q 708-709 of Record on Appeal in *Storrer v. Paul Revere*)

There are two factors which are dissimilar between *Storrer v. Paul Revere* and *Hangarter*.

First, in the *Hangarter* case, the disability was a physical injury which was disabling. Thus, emotional factors would not "terminate" the disability. In STORRER, the injury was major depression, with a "suicide" factor which REVERE would take advantage of to add pressure to the emotional unstable condition—a MAJOR factor which could terminate the policy. Death is a great "terminator" of disability claims.

Second, and perhaps as part of the first set forth above, REVERE would not accept the medial records of the treating medical professional, and even refused to have the claimant plaintiff examined by any independent medical professional. Thus, REVERE placed the

---

[3] REVERE withheld the documents from discovery and Rule 26 disclosures in the STORRER case, and thus STORRER's attorney did not discover the document.

[4] REVERE also withheld this document from the initial disclosure under Rule 26 and all other discovery in the STORRER case.

plaintiff Storrer in the risk of 1) fight the claim and increase the risk of suicide or 2) forego the claim and make due with your life.

The cases are almost parallel cases, with the only difference being that the conduct of REVERE, and its changed name companies, was far more outrageous than that demonstrated in the *Hangater* case, with Storrer being put to a much higher risk by the defendants merely to increase their profits..

**B. Claim of Untimely Motion**

REVERE argues that because Hangater was filed in 1999, Plaintiff's "related case" motion is untimely. The fact is that, at the time Storrer filed the instant action, there was no "Hangarter" case which plaintiff's counsel could relate the case to. Local Rule for the Northern District of California, *Rule 3-12*, provides that whenever a party knows or learns that an action may relate to another action concerning **substantially the same parties**, **the same transactions or events** and it appears to **create an undue burdensome duplication of labor and expense** or **conflicting results if the cases were tried by different judgment**, the motion for the Court to consider whether the cases should be related may be filed. Under the rule, **when Hangarter was filed against defendants after plaintiff had filed his case, the attorneys for the defendants were required to file the notice of related case.**

**C. Objection to Judge Larson**

Clearly, REVERE waived any right to object to Judge Larson in the case of *Hangarter v. The Paul Revere Life Insurance Company*, and this would surely apply to the related action on the same facts. It must be remembered that under the Rule of Court, the attorneys for The Paul Revere Life Insurance Company was required, if acting in good faith, to "relate" these cases, but did not. Simply put, the defendant is not only looking for a new set of facts, but to find a new judge having waived any rights to object to Judge Larson on these same facts.

**CONCLUSION**

For the reasons set forth above, it is submitted that the instant case should be transferred to the Honorable Judge James Larson and considered related to the case of Joan

Hangarter v. The Paul Revere Life Insurance Company, Case No. C99-5286JL, to promote judicial efficiency and to avoid the risk of inconsistent rulings as to the law involving the same legal and factual issue.

Date: February 28, 2008

DAY LAW OFFICES

/s/ Montie S. Day

BY:_____________________________

Montie S. Day, Attorney